Smith, C. J.
I. To show that plaintiffs have not departed with their title, it is said, by their counsel, that they can only convey by deed; they are not a corporation for any purpose, but mere -tenants in common of the undivided land in Cornish; and, inasmuch as no deed is shown, the title still remains in them, and they are entitled now to recover.
*271 It is certain there is nothing in the grant or charter of Cornish, which, in express terms, makes the grantees a corporation. Indeed, in the same instrument, the persons who shall inhabit within the limits of Cornish are constituted a body-politic. This creature called a propriety is peculiar to New England ; we find nothing like it in Great Britain. It is coeval with the grant of this country, and our towns are framed • after the model of the ancient State or Commonwealth. A large tract of country was granted to a number of persons. To them belonged the right of soil. To the same men, by the same instrument, were granted the powers of government. This large tract of country was the Province or Commonwealth. When a town was granted to certain individuals by name, these persons were proprietors of the soil, and had also the powers and privileges of a town. The latter powers could only be exercised by a corporate body, and, therefore, without any act of incorporation, the grantees were deemed and taken to be a corporate bodjr in the same manner as the whole State, i. e. the owners of the soil, were a body politic, and exercised powers of government upon a scale somewhat larger, indeed, than those exercised by towns. The land comprehended within the peninsula now called Boston was granted, by the General Court of Massachusetts, to certain individuals by name. These were not incorporated, but the very grant of a parcel of land large enough for a town, to a number of persons, was considered as constituting them a propriety, — a body with town privileges. It was necessary they should have a name ; accordingly we find it voted, by the Governor and assistants of that day, that Tramontane, tlie vulgar name, be called Boston; and this is the only act incorporating the capital of Massachusetts, and the first town in New England. When lands were granted to a number of individuals, they acted as a corporation, both as it respected the improving, dividing, and disposing of the soil, and the government of the inhabitants. The freeholders, owners of the soil, were freemen and members of the corporation. They were voters, and the only voters, in the corporate body. When a person was made free of the corporation, or, in other words, received as a member, *272 he thereby became interested in the town property and town privileges.
In process of time, when lands were granted on speculation, and not merely for settlement, the propriety and town began to be viewed as distinct bodies. All inhabiting within the limits of the territory granted were constituted a corporation, endowed with the franchises and privileges of towns. The powers of government were vested in this body. This body comprehended some, but not all, of the proprietors of the soil; and many who owned no lands were members of the town corporation. The proprietors of the soil ceased to possess any powers of government, but they still retained as many of their corporate powers as were necessary or useful, — suchas the corporate power of managing, improving, dividing, and disposing of the soil. N. H. Laws, ed. 1805, 191.
This was the law when Cornish was granted, and had been so for more than half a century. The grantees were a body politic (Laws, 191), for the purpose of managing, improving, bringing forward the settlement by clearing out roads, erecting bridges, mills, &c., dividing their lands, or disposing of them to others. They acted not as individuals, as tenants in common, but as a corporate body, by majority of votes. They held meetings; voted to raise money ; assessed taxes on their lands, even after divided; made roads; built mills; commenced and defended lawsuits ; divided their lands into lots; appropriated certain parcels to public uses ; made extra grants to individual proprietors and to strangers, whenever, in the opinion of a majority in open meeting, the good of the propriety would be promoted thereby. By the same instrument which granted the sqj.1, the persons who should afterwards inhabit within ' the limits described were invested with the powers of towns; but they had no control over the' soil, as towns had at the first settlement of the country, and for some time afterwards.
This I conceive to be the origin of proprieties. They are a corporation of a peculiar kind, and with very limited powers. The share or interest of a member was grantable by deed ; it was devisable and descendible. But I believe it never was *273 holden that it could be taken for debt, or levied on. When the propriety had divided, or granted away, all the soil, it would seem that the corporate power ought to be considered as ipso facto dissolved. But this does not seem to have been the case. At least, statutes provided for the exercise of certain corporate powers after partition. Temporary Acts, 15, 87, Prov. Law. It is not easy, perhaps, to determine when the corporate powers of a propriety cease. They do not cease when the town powers commence, or come into exercise. They cease when the object in view, by creating them, ceases ; i. e., when the tract of land is so managed, improved, &c., as no longer to require their continuance. The act of July 8, 1781, 191, provides that proprietors of townships and tracts of land, after division and severance among the proprietors, may levy taxes on the lands so severed and allotted to particular individuals, for the purpose of fulfilling the terms and conditions of the grant or charter.
If it be inquired'where the doctrine I have stated is to be found, I answer, in the records of blew England, in the decisions of courts. These powers are implied, and these doctrines recognized, in various statutes ; but our statutes do not create proprietors of a township or large tract of land a propriety, or corporate body with corporate po wers ; they do not define their powers. They existed before we had any statute on the subject, at least any that can now be found. Our statutes are framed on the idea that proprieties existed with certain corporate powers. The act of May 18, 1718, Prov. Law, 71, regulates proprietary meetings. This does not authorize proprietors to meet and do certain acts at their meetings; it is implied that they may meet, and, as a corporate body, do certain acts. It does not give corporate powers; it implies that they already have them. An act of the same date, p. 112, declares that proprietors may sue and defend, either by themselves or their agents or attorneys, and authorizes them to choose agents at any. meeting orderly warned. It also provides how process shall be served on them. In the year following (May 2, 1719, 186, 187), in an act for regulating townships, choice of town officers, and setting forth their pow *274 ers, the third section enacts, “ that the proprietors of all undivided or common lands are empowered to manage, improve, divide,-or dispose of the same, as hath been, or shall be, concluded and agreed on by the major part of the proprietors.” (a) The preamble of the Temporary Act of 1 Geo. III. T. L. 25, says the laws in force imply that there is law for raising and levying money upon the rights of proprietors of lands held in common in a summary way. " This act, and the subsequent ones, before the Revolution (Temporary Laws, 15, 87 ; State Laws,' ed. 1805, 190, &c.), make similar provision on the subject of proprieties, as the laws now in force. Our statutes only modify the power of proprieties; they do not confer it. (See Hutch. Coll. Papers, 167; Mass. Hist. Coll. VI. 236, 237.)
But enough has been said to show that the present objection is not well founded. It always has been the usage, in this State, for proprietors to convey by vote, and it is too late to object to the legality of such conveyances. Though proprieties are a corporation for certain purposes, they are a corporation sui generis. Like the ancient towns, they may convey lands by vote. The lands granted in early times were not granted under the seal of the company, but by vote. It was held that the patent did not require that there should be a corporation seal, but that the manner of disposing of their lands was left at liberty of the General Court. 1 Hutch. 323, n. This conveyance of lands by vote is a part of the New England common law. Our statute of 1718 expressly declares, in affirmance of this common law, that proprietors of common and undivided lands may dispose of them as shall be concluded and agreed on by the major part of the proprietors. The former, as well as the present, law, provides that proprietors, at any legal meeting, may confirm conveyances by them intended to have been made. Temporary Laws, Prov. 16 ; State Laws, ed. 1805, 190.
I have gone thus far into the subject, not from any doubt I *275 entertain of the legality of proprietors conveying their land by vote, but to show that much of our law rests on the early customs and usages of New England, (a)
II. [The next point relates to the admissibility of a record not attested by any person. It was held, that records of proprietors’ doings, though not attested by any clerk, may be received in evidence against the proprietors, if there be sufficient evidence of their genuineness: the attestation of a clerk is not indispensably necessary to establish a valid record. S. P. Adams v. Stanyan, 24 N. H. 405, 416.]
III. [It was next held, that, at a great distance of time, say thirty years, it would be presumed, as against the proprietors (nothing appearing to the contrary), that proprietors’ meetings were legally warned and held. See Cobleigh v. Young, 15 N. H. 498.]
IY. A fourth objection is that the proceedings, if they can operate as a conveyance or estoppel, if properly authenticated, and if the meeting were duly warned, still are not binding, because the subject-matter of the votes was not inserted in the notification.
If it be not necessary to produce the warrants or notifications, or copies of the originals, and to prove the notice actually given, liow can we say whether' this objection is well founded in point of fact, or not ? We cannot tell whether the intent and design of the meeting was inserted, or not. And, though it is certainly reasonable that whatever is to be discussed at a meeting should be inserted in the notification for calling the meeting, and especially that all proposed grants of land should be specified, yet it is equally reasonable that proprietors should, in a reasonable time after grants made, where no such notice was actually given, except, or make their objee *276 tions, to the legality of the proceeding. If they make no objection, but peaceably acquiesce under it, it is reasonable to suppose that they waive the irregularity in the notification.
The act of 1718, “ for the better regulation of town and proprietary meetings,” p. 72, provides “ that no matter or thing shall be voted or determined at a town meeting, called at the request of a certain number of freeholders, but what is inserted in the warrant.” And the act of 1791 enacts “that nothing done at a town meeting shall be valid, unless the subject-matter thereof shall have been inserted in the warrant for calling the meeting.”
I have met with no similar provision respecting, proprietary meetings. It is provided in the act of 1760, re-enacted in 1781, “ that, where no particular method has been agreéd upon by proprietors for calling their meetings, a justice of the peace, upon the application of the owners of a certain number of shares, expressing, in writing, their desire that he would notify and call a meeting, and the end and design of it, shall issue a warrant or notification for a meeting, — among other things setting forth the business to be transacted.” It is not said that this shall be done at every meeting; nor tliat nothing shall be valid when this is not inserted, as in the case of towns. It is certainly remarkable that the statute of 1718, which was made for the regulation of town and proprietary meetings, should provide for inserting the design of the meeting in the notification for town meetings, and should omit proprietary meetings. Besides, the end and design of the meeting, spoken of in the statute of 1781, is a phrase of «- very general nature. It is believed that proprietors have not generally conceived that it was necessary to insert the particular matters to be transacted at the meeting in the notification; at least that this was the case in former times. I know one proprietary, who. have granted many lands, where the custom was to propose- a grant in one meeting and to make it at the next, or at an adjournment of the same meeting. I'allude to the Proprietors of Old Dunstable. See Proprietors of Old Dunstable v. Blood, 6 Manuscript Reports, 143-161. Proprietors of Peterborough — Qucere as to Masonian Proprietors.
*277 Tlie first notification (for the meeting in 1763) expresses as the design of the meeting, inter alia, to choose a committee to lay out any tracts of land to any particular persons, and to do any thing else which the proprietors may think will be for the benefit of the town. This is a general account of the business to be transacted at the meeting. Prov. Law, 15. At this meeting, a method was agreed on for calling meetings in future, in which it is required that the reason, or reasons, for calling the meeting, be fully expressed in the notification to be posted up. I think we are bound to presume that this regulation was complied with. But, inasmuch as the statute does not make what is now insisted upon indispensably necessary to the validity of the proceedings, 1 am not prepared to say that the grant is void without it; or that the plaintiffs can, at this distance of time, take advantage of it.
[Three other objections taken by the plaintiffs were then considered and overruled.]

Verdict set aside ; and verdict entered, according to the agreement of the parlies, for defendant.

[1]

Judge Livermore, who was absent, concurs; and Judge Wingate, who was present, says he entirely agrees.

 The same act recognizes certain customs and usages of towns; powers of towns to grant lands. It is made the duty of the town clerk to record such grants, &c.

 If conveyance is not valid to pass the land, it may still estop the proprietors from recovering in ejectment. See New Boston v. Balch, 12 Manuscript Reports, 327.
How is a proprietary constituted?
There must be a grant of a township or large tract of laud. It seems the grant need not be by the supreme power; for grantees of townships by Masonian proprietors are proprietaries.
It must be to two in unequal proportions, or to more than two.

 Tho doctrino that proprietors oí common lands can convey by vote has repeatedly been recognized. Richardson, C. J., in Coburn v. Ellenwood, 1827, 4 N. H. 99, 101, 102; Atkinson v. Bemis, 1840, 11 N. H. 11; Little v. Downing, 1858, 37 N. H. 355.
See also, as to proprietaries, Parker, C. J.,in Wells v. Burbank, 1845, 17 N. H. 393, 403, 404; Eastman, J., in Forsoith v. Clark, 1850, 21 N. H. 409, 416, 417; Proprietors of Sunapee v. Eastman, 1855, 32 N. H. 470; Eastman, J., in Corbett v. Norcross, 1857, 35 N. H. 99, 114; Bell, J., in Willey v. Portsmouth, 1857, 35 N H. 303, 310; South Hampton v. Fowler, 1872, 52 N. H. 225 (s. c. 54 N. H. 197).